UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,

  -against-

USA HALAL FOODS, INC. A.K.A.
AS-SALAAM HALAL AND FINE
FOODS WHOLESALE DISTRIBUTORS
and KASHIIF SAEED,

                Defendants.
-------------------------------------------------------x

**COMPLAINT**

Civil Action No.
23-cv-2689

The UNITED STATES OF AMERICA ("Plaintiff"), by its attorney, Breon Peace, United States Attorney for the Eastern District of New York, and Kevin Yim, Assistant United States Attorney, of counsel, acting on behalf of the United States Department of Agriculture ("USDA"), brings this civil action under the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §§ 601 *et seq.*, and the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451 *et seq.*, seeking permanent injunctive relief to prevent the Defendants from continuing to violate federal food safety laws. In support of this Complaint, Plaintiff alleges as follows:

**Parties**

1. Plaintiff is the United States of America.

2. Defendant USA Halal Foods, Inc. ("USA Halal") is a meat and poultry distributor incorporated in the State of New York, located at 179-17 149th Avenue, Jamaica, New York 11434, within the Eastern District of New York.

3. USA Halal also does business under the names As-Salaam Halal and Fine Foods Wholesale Distributors.

4. USA Halal engages in the transport, sale, and distribution of, *inter alia*, meat, meat food products, poultry, and poultry products, in interstate and intrastate commerce. USA Halal primarily sells and transports meat and poultry products to wholesale accounts in the area of New York, New Jersey and Connecticut.

5. Defendant Kashif Saeed ("Saeed") is the President and owner of USA Halal and has full operational knowledge of USA Halal's business activities. Defendant Saeed resides in Woodbury, NY, within the Eastern District of New York.

## Jurisdiction and Venue

6. This Court has jurisdiction over this action pursuant to 21 U.S.C. §§ 467c and 674, and 28 U.S.C. §§ 1331, 1337, and 1345.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b).

## Statutory and Regulatory Framework

8. In enacting the FMIA and PPIA, Congress found that it is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and poultry food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged. FMIA, 21 U.S.C. § 602; PPIA, 21 U.S.C. § 451.

9. The FMIA and PPIA grant the Secretary of Agriculture the power to regulate meat and poultry products distributed in interstate and foreign commerce. FMIA, 21 U.S.C. § 602; PPIA, 21 U.S.C. § 451. The United State Department of Agriculture ("USDA"), Food Safety and Inspection Service ("FSIS"), is responsible for implementing the FMIA and PPIA to carry out the USDA's mission of protecting consumer health and welfare. 9 C.F.R. 300.2(b)(1), (2).

10. Because the State of New York does not maintain a meat and poultry inspection system that is at least equal to the federal system, the Secretary of Agriculture has designated New York as a state in which the requirements of the FMIA and PPIA apply to operations and transactions in meat or poultry products that are wholly conducted within the state. FMIA, 21 U.S.C. § 661(c)(1); PPIA, 21 U.S.C. § 454(c); 9 C.F.R. § 331.2. Therefore, the requirements of the FMIA and PPIA apply to intrastate as well as interstate transactions in meat and poultry by USA Halal.

11. The FMIA and PPIA prohibit the selling, transporting, offering for sale or transportation, or receiving for transportation, in commerce, of meat or meat food products, and poultry or poultry products, capable of use as human food, that are adulterated, misbranded, or that have not been inspected and passed by the USDA when inspection is required. FMIA, 21 U.S.C. § 610(c); PPIA, 21 U.S.C. § 458(a)(2).

12. The FMIA and PPIA prohibit doing any act, with respect to any regulated meat or poultry products that are capable of use as human food, while such products are being transported in commerce or held for sale after such transportation, that is intended to cause or has the effect of causing such products to be adulterated or misbranded. FMIA, 21 U.S.C. § 610(d); PPIA, 21 U.S.C. § 458(a)(3).

13. Meat and poultry products are misbranded under the FMIA and PPIA if, *inter alia*, their labels are false or misleading in any particular way or the products fail to bear a label showing name and place of business of the manufacturer, packer, or distributor; an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count; and the inspection legend. See FMIA, 21 U.S.C. § 601(n)(5), (12) & 9 C.F.R. § 301.2; PPIA, 21 U.S.C. § 453(h)(5), (12) & 9 CFR 381.1(b).

14. The FMIA and PPIA require all those who engage in the business of buying, selling, or transporting regulated meat or poultry products in commerce to keep records that fully and correctly disclose their business transactions and to afford the USDA access to such records. FMIA, 21 U.S.C. § 642(a); PPIA 21 U.S.C. § 460(b).

**Notices of Warning Issued for 2017 to 2020 Violations of the FMIA and PPIA**

15. The USDA is empowered to issue Notices of Warning ("NOWs") whenever the public interest will be adequately served.  FMIA, 21 U.S.C. § 676(b); PPIA, 21 U.S.C. § 462.

16. Defendants have a history of repeatedly violating the FMIA and PPIA.  Between 2017 and 2020, FSIS issued four NOWs to USA Halal based on various violations of the FMIA and PPIA.

17. On September 11, 2017, FSIS issued an NOW to USA Halal for offering for transportation and sale approximately 700 pounds of non-federally inspected fresh goat meat, in violation of the FMIA, 21 U.S.C. § 610.

18. On May 7, 2018, FSIS issued an NOW to USA Halal for transporting and selling approximately 200 pounds of non-federally inspected chicken, and for failing to maintain records that fully and accurately disclosed all transactions in regulated products, in violation of the PPIA, 21 U.S.C. §§ 458, 460.

19. On August 28, 2019, FSIS issued an NOW to USA Halal for receiving for transportation in commerce, transporting, and selling approximately 50 pounds of non-federally inspected lamb products, and for failing to maintain required records, in violation of the FMIA, 21 U.S.C. §§ 610, 642.

20. On July 21, 2020, FSIS issued an NOW to USA Halal for receiving for transportation in commerce approximately 400 pounds of non-federally inspected and misbranded

meat products from an unidentified source, and for failing to maintain required records, in violation of the FMIA, 21 U.S.C. §§ 610, 642.

21. Each of the four NOWs issued to USA Halal between 2017 and 2020, *inter alia*, summarized the investigative findings, identified violations of the specific section or sections of the FMIA or PPIA, and informed Defendants that any subsequent violation of the FMIA or PPIA could result in legal action.

22. Although Defendants were notified of these repeated violations and agreed to comply with the statutory requirements, they continue to fail to do so.

**Continued Violations of the FMIA and PPIA in 2021 and 2022**

23. On or about January 8, 2021, pursuant to Invoice No. 08530080, USA Halal purchased approximately 7,355 pounds of whole beef feet from American Foods Group, LLC ("American Foods") of Chicago, Illinois. On or about February 12, 2021, pursuant to Invoice No. 08540108, USA Halal purchased approximately 2,584 pounds of whole beef feet from American Foods. Invoice Nos. 08530080 and 08540108 indicate that the whole beef feet originated from Green Bay Dressed Beef, LLC, Est. # 410, a subsidiary of American Foods in Green Bay, Wisconsin.

24. On various dates in January and February of 2021, USA Halal transported whole beef feet that it purchased from American Foods to New York Meat and Fish Market Corp. ("New York Meat"), Est. # M45750, located in the Bronx, New York, for further processing by USA Halal employees.

25. Pursuant to a "Contract Agreement," signed by USA Halal's Vice President on its behalf and dated March 1, 2020, New York Meat subleased a portion of its processing facility to

USA Halal. Under the Contract Agreement, USA Halal paid New York Meat $7,500 per month, and New York Meat furnished space in its facility and certain equipment and supplies for USA Halal employees to use to cut and pack meat and poultry products.

26. Although New York Meat operates under a federal grant of inspection, the USA Halal employees who cut and packed meat and poultry at the New York Meat facility did not do so under the oversight of federal inspectors. Accordingly, the beef feet and other meat and poultry products that USA Halal employees processed at New York Meat's facility were not federally inspected and passed, as required by the FMIA and PPIA. FMIA, 21 U.S.C. § 604; PPIA, 21 U.S.C. § 455(b).

27. After slicing and repackaging the beef feet at New York Meat's facility, USA Halal employees transported the sliced beef feet back to USA Halal's warehouse and offered the sliced beef feet for sale to USA Halal's wholesale customers.

28. On or about January 20, 2021, pursuant to Invoice No. 1162919, USA Halal offered for sale or transportation, and sold, approximately 40 pounds of sliced beef feet, capable of use as human food, to wholesale customer United Petroleum & Convenience Shop Corp., d.b.a. Rockland Halal Mart ("Rockland"), which operates a retail store in Suffern, New York. On or about February 17, 2021, pursuant to Invoice No. 1167479, USA Halal offered for sale or transportation, and sold, approximately 40 pounds of sliced beef feet, capable of use as human food, to Rockland. The sliced beef feet sold by USA Halal to Rockland originated as whole beef feet from American Foods and were sliced and repackaged by USA Halal employees at New York Meat.

29. On March 26, 2021, an FSIS investigator visited Rockland and observed approximately 55 pounds of sliced beef feet offered for sale to Rockland's retail customers in plastic bags with no marks of federal inspection or labeling required under the FMIA. A

representative of Rockland confirmed to the FSIS investigator that Rockland purchased the sliced beef feet from USA Halal, and that USA Halal delivered the sliced beef feet to Rockland in containers bearing no marks of federal inspection or labeling required under the FMIA.

30.     On March 26, 2021, the FSIS investigator who visited Rockland also observed approximately 44 pounds of beef tripe, capable of use as human food, offered for sale to Rockland's retail customers in a plastic bag with no marks of federal inspection or labeling required under the FMIA.  A representative of Rockland confirmed to the FSIS investigator that USA Halal sold the beef tripe to Rockland, and that USA Halal delivered the beef tripe to Rockland in containers bearing no marks of federal inspection or labeling required under the FMIA.

31.     On March 30, 2021, two FSIS investigators visited USA Halal's warehouse and interviewed Defendant Saeed.  In a written statement documenting this interview, signed by Defendant Saeed and dated April 7, 2021, Defendant Saeed confirmed that USA Halal paid New York Meat $7,500 per month under the Contract Agreement.  In return, New York Meat allowed USA Halal employees to process an unlimited amount of meat products at the New York Meat facility, use New York Meat's packaging materials for the processed meat products, and label boxes containing the processed meat products with New York Meat's marks of federal inspection.  Defendant Saeed also confirmed that USA Halal employees transported whole beef feet received from American Foods to New York Meat, sliced the whole beef feet at New York Meat's facility, and transported the sliced beef feet back to USA Halal's warehouse for further distribution.  In addition, Defendant Saeed admitted that USA Halal sold approximately 80 pounds of misbranded sliced beef feet and approximately 44 pounds of misbranded beef tripe, all void of the marks of federal inspection, to Rockland for resale.

32. During their visit to USA Halal's warehouse on March 30, 2021, the FSIS investigators also observed and photographed approximately 450 pounds of misbranded poultry products, capable of use as human food, offered for sale or transportation by USA Halal. In his signed statement dated April 7, 2021, Defendant Saeed admitted that the 450 pounds of poultry products were misbranded and were offered for sale to USA Halal's wholesale customers.

33. Included in the misbranded poultry products observed on March 30, 2021, were approximately 40 pounds of bone in split chicken breasts in a box labeled as Frying Chicken Whole Legs CVP P-32; approximately 160 pounds of boneless skinless chicken thighs in four boxes labeled as Jumbo Chicken Bone In Skin On Thigh Meat P-737; approximately 40 pounds of chicken tenders in a box without required labeling or the marks of federal inspection; approximately 120 pounds of bone in chicken leg quarters in boxes without required labeling or the marks of federal inspection; and approximately 90 pounds of whole chickens in a box without required labeling or the marks of federal inspection. Defendant Saeed was unable to produce records to document the source of the bone in split chicken breasts or boneless skinless chicken thighs that were contained in boxes with descriptions that did not match their contents.

34. On March 30, 2021, the FSIS investigators observed a table located in the USA Halal warehouse with raw chicken residue on the top and unlabeled boxes stored underneath. On information and belief, USA Halal employees used the table to process raw poultry, including the approximately 160 pounds of boneless skinless chicken thighs contained in four boxes labeled Jumbo Chicken Bone In Skin On Thigh Meat P-737, without federal inspection at the USA Halal warehouse.

35. On or about August 31, 2021, an FSIS investigator conducted a follow-up visit to USA Halal's warehouse and interviewed Defendant Saeed. During this visit, the FSIS investigator

observed and photographed approximately 327 pounds of misbranded meat and poultry products, capable of use as human food, offered for sale or transportation by USA Halal.

36.     Included in the misbranded meat and poultry products observed on August 31, 2021, were approximately 80 pounds of boneless chicken thighs; 80 pounds of chicken party wings; 23 pounds of sliced lamb; 20 pounds of sliced oxtail; 15 pounds of whole oxtail; and 60 pounds of gyro meat.  These meat and poultry products were stored in bags or boxes without the marks of federal inspection or labeling required under the FMIA and PPIA.  In a statement documenting the August 31, 2021, interview, signed by Defendant Saeed and dated September 2, 2021, Defendant Saeed admitted that USA Halal caused these meat and poultry products to be misbranded and offered the misbranded products for sale to its wholesale customers.

37.     On or about August 23, 2022, an FSIS investigator visited USA Halal's warehouse for a third time and interviewed Defendant Saeed.  During this visit, the investigator observed and photographed approximately 340 pounds of misbranded meat and poultry products, capable of use as human food, offered for sale or transportation by USA Halal.

38.     Included in the misbranded meat and poultry products observed on August 23, 2022, were approximately 120 pounds of chicken leg quarters; 40 pounds of boneless skinless chicken thighs; 30 pounds of lamb feet; 40 pounds of sliced beef feet; 40 pounds of chicken gizzards; 40 pounds of chicken feet; 10 pounds of beef kidneys; and 20 pounds of gyro meat. These meat and poultry products were stored in bags or boxes without the marks of federal inspection or labeling required under the FMIA and PPIA.  In a statement documenting the interview, signed by Defendant Saeed and dated August 23, 2022, Defendant Saeed admitted that USA Halal caused these meat and poultry products to be misbranded and offered the misbranded products for sale to its wholesale customers.

39. Defendant Saeed also acknowledged in his signed statement dated August 23, 2022, that he is aware that, as a distributor, USA Halal is not allowed to repackage or cause meat or poultry products to become misbranded. Defendant Saeed further acknowledged that USA Halal has been educated and warned several times regarding their responsibilities under the FMIA and PPIA.

40. By issuing the prior NOWs, FSIS has extended the Defendants numerous opportunities to voluntarily comply with the FMIA and PPIA in an effort to avoid utilizing the Court's resources.

41. Although Defendants are familiar with the requirements of the FMIA and PPIA, they continue to violate the statutory requirements.

42. Plaintiff now seeks the Court's assistance with enforcing the FMIA and PPIA against Defendants because, based on the Defendants' continuing violations, it has become clear that unless enjoined, restrained, and prohibited from further violations, Defendants will continue to violate the FMIA and PPIA.

## CLAIMS FOR RELIEF

### COUNT I

### Misbranded Meat Products Offered for Sale or Transportation and Sold

43. Plaintiff realleges and incorporates by reference all preceding paragraphs.

44. On various dates in January through March of 2021, Defendants violated the FMIA, 21 U.S.C. § 610(c), by offering for sale or transportation, and selling, in commerce, approximately 80 pounds of misbranded sliced beef feet and 44 pounds of misbranded beef tripe, capable of use as human food, to a wholesale customer. The sliced beef feet and beef tripe were misbranded, pursuant to 21 U.S.C. § 601(n)(5), (12) and 9 C.F.R. § 301.2, because they were devoid of the

marks of federal inspection and lacked required labeling showing the name and place of business of the packer or distributor and an accurate statement of the quantity of the contents.

45. On various dates in August of 2021, Defendants violated the FMIA, 21 U.S.C. § 610(c), by offering for sale or transportation, in commerce, approximately 118 pounds of misbranded meat products, capable of use as human food, including sliced lamb, sliced oxtail, whole oxtail, and gyro meat. The meat products were misbranded, pursuant to 21 U.S.C. § 601(n)(5), (12) and 9 C.F.R. § 301.2, because they were devoid of the marks of federal inspection and lacked required labeling showing the name and place of business of the packer or distributor and an accurate statement of the quantity of the contents.

46. On various dates in August of 2022, Defendants violated the FMIA, 21 U.S.C. § 610(c), by offering for sale or transportation, in commerce, approximately 90 pounds of misbranded meat products, capable of use as human food, including lamb feet, sliced beef feet, and gyro meat. The meat products were misbranded, pursuant to 21 U.S.C. § 601(n)(5), (12) and 9 C.F.R. § 301.2, because they were devoid of the marks of federal inspection and lacked required labeling showing the name and place of business of the packer or distributor and an accurate statement of the quantity of the contents.

## COUNT II

### Misbranded Poultry Products Offered for Sale or Transportation

47. Plaintiff realleges and incorporates by reference all preceding paragraphs.

48. On various dates in March of 2021, Defendants violated the PPIA, 21 U.S.C. § 458(a)(2)(A), by offering for sale or transportation, in commerce, approximately 450 pounds of misbranded poultry products, capable of use as human food, including bone in split chicken breasts, boneless skinless chicken thighs, chicken tenders, bone in chicken leg quarters, and whole

chickens.  The bone in split chicken breasts and boneless skinless chicken thighs were misbranded, pursuant to 21 U.S.C. § 453(h)(1) and 9 C.F.R. § 381.1, because the labeling on their containers did not match the contents and was false and misleading.  The chicken tenders, bone in chicken leg quarters, and whole chickens were misbranded, pursuant to 21 U.S.C. § 453(h)(5), (12) and 9 C.F.R. § 381.1, because they were devoid of the marks of federal inspection and lacked required labeling showing the name and place of the business of the manufacturer, packer, or distributor, and an accurate statement of the quantity of the product.

49. On various dates in August of 2021, Defendants violated the PPIA, 21 U.S.C. § 458(a)(2)(A), by offering for sale or transportation, in commerce, approximately 160 pounds of misbranded poultry products, capable of use as human food, including boneless chicken thighs and chicken party wings.  These poultry products were misbranded, pursuant to 21 U.S.C. § 453(h)(5), (12) and 9 C.F.R. § 381.1, because they were devoid of the marks of federal inspection and lacked required labeling showing the name and place of the business of the manufacturer, packer, or distributor, and an accurate statement of the quantity of the product.

50. On various dates in August of 2022, Defendants violated the PPIA, 21 U.S.C. § 458(a)(2)(A), by offering for sale or transportation, in commerce, approximately 220 pounds of misbranded poultry products, capable of use as human food, including chicken leg quarters, boneless skinless chicken thighs, chicken gizzards, and chicken feet.  These poultry products were misbranded, pursuant to 21 U.S.C. § 453(h)(5), (12) and 9 C.F.R. § 381.1, because they were devoid of the marks of federal inspection and lacked required labeling showing the name and place of the business of the manufacturer, packer, or distributor, and an accurate statement of the quantity of the product.

## COUNT III

### Meat Products Caused to be Misbranded

51. Plaintiff realleges and incorporates by reference all preceding paragraphs.

52. On various dates in January through March of 2021, Defendants violated the FMIA, 21 U.S.C. § 610(d), by causing beef feet, capable of use as human food, to be misbranded while they were being transported in commerce or held for sale after such transportation. After receiving whole beef feet in commerce, USA Halal transported the whole beef feet to New York Meat, sliced the beef feet at New York Meat's facility, repacked the sliced beef feet into unmarked containers devoid of the marks of federal inspection or labeling required by 21 U.S.C. § 601(n)(5), (12) and 9 C.F.R. § 301(2), transported the sliced beef feet back to USA Halal, and thereafter held the misbranded beef feet for sale to wholesale customers.

53. On various dates in August of 2021, Defendants violated the FMIA, 21 U.S.C. § 610(d), by causing sliced lamb, sliced oxtail, whole oxtail, and gyro meat, capable of use as human food, to be misbranded while the meat products were being transported in commerce or held for sale after such transportation. After receiving the source products in commerce, USA Halal opened the containers, repacked the meat products into unmarked containers devoid of the marks of federal inspection or labeling required by 21 U.S.C. § 601(n)(5), (12) and 9 C.F.R. § 301(2), and thereafter held the misbranded beef products for sale to wholesale customers.

54. On various dates in August of 2022, Defendants violated the FMIA, 21 U.S.C. § 610(d), by causing lamb feet, sliced beef feet, and gyro meat, capable of use as human food, to be misbranded while the meat products were being transported in commerce or held for sale after such transportation. After receiving the source products in commerce, USA Halal opened the containers, repacked the meat products into unmarked containers devoid of the marks of federal

inspection or labeling required by 21 U.S.C. § 601(n)(5), (12) and 9 C.F.R. § 301.2, and thereafter held the misbranded beef products for sale to wholesale customers.

## COUNT IV

### Poultry Products Caused to be Misbranded

55.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

56.     On various dates in March of 2021, Defendants violated the PPIA, 21 U.S.C. § 458(a)(3), by causing bone in split chicken breasts, boneless skinless chicken thighs, chicken tenders, bone in chicken leg quarters, and whole chickens, capable of use as human food, to be misbranded while the poultry products were being transported in commerce or held for sale after such transportation.  After receiving the source products in commerce, USA Halal opened the containers, repacked the poultry products into unmarked containers devoid of the marks of federal inspection or labeling required by 21 U.S.C. § 453(h)(5), (12) and 9 C.F.R. § 381.1, and thereafter held the misbranded poultry products for sale to wholesale customers.

57.     On various dates in August of 2021, Defendants violated the PPIA, 21 U.S.C. § 458(a)(3), by causing boneless chicken thighs and chicken party wings, capable of use as human food, to be misbranded while the poultry products were being transported in commerce or held for sale after such transportation.  After receiving the source products in commerce, USA Halal opened the containers, repacked the poultry products into unmarked containers devoid of the marks of federal inspection or labeling required by 21 U.S.C. § 453(h)(5), (12) and 9 C.F.R. § 381.1, and thereafter held the misbranded poultry products for sale to wholesale customers.

58.     On various dates in August of 2022, Defendants violated the PPIA, 21 U.S.C. § 458(a)(3), by causing chicken leg quarters, boneless skinless chicken thighs, chicken gizzards, and chicken feet, capable of use as human food, to be misbranded while the poultry products were

being transported in commerce or held for sale after such transportation. After receiving the source products in commerce, USA Halal opened the containers, repacked the poultry products into unmarked containers devoid of the marks of federal inspection or labeling required by 21 U.S.C. § 453(h)(5), (12) and 9 C.F.R. § 381.1, and thereafter held the misbranded poultry products for sale to wholesale customers.

## COUNT V

**Non-federally Inspected Meat Products Offered for Sale or Transportation and Sold**

59. Plaintiff realleges and incorporates by reference all preceding paragraphs.

60. On various dates in January through March of 2021, Defendants violated the FMIA, 21 U.S.C. § 610(c), by offering for sale or transportation, and selling, in commerce, approximately 80 pounds of non-federally inspected sliced beef feet, capable of use as human food, to a wholesale customer. USA Halal sliced and otherwise further processed the whole beef feet at New York Meat's facility without federally inspection, transported the sliced beef feet to the USA Halal warehouse, and offered and sold the non-federally inspected sliced beef feet to a wholesale customer.

## COUNT VI

**Non-federally Inspected Poultry Products Offered for Sale or Transportation**

61. Plaintiff realleges and incorporates by reference all preceding paragraphs.

62. On various dates in January through March of 2021, Defendants violated the PPIA, 21 U.S.C. § 458(a)(2)(B), by offering for sale or transportation, in commerce, approximately 160 pounds of boneless skinless chicken thighs, capable of use as human food, that were required to be federally inspected, but were not inspected and passed. USA Halal received the source product as bone in skin on thigh meat, deboned and otherwise further processed the source product at its

warehouse without federal inspection, repackaged the boneless skinless chicken thighs into the source product boxes, and offered the non-federally inspected product for sale or transportation to its wholesale customers.

## COUNT VII

### Record-keeping Requirements Violated

63.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

64.     On or about March 30, 2021, August 31, 2021, and August 23, 2022, Defendants were unable to provide USDA investigators with records containing adequate information regarding transactions in meat and poultry products, capable of use as human food, including information identifying the source of the products, as required by the FMIA, 21 U.S.C. § 642(a), the PPIA, 21 U.S.C. § 460(b), and applicable regulations, 9 C.F.R. §§ 320.1 and 381.175.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in its favor and against the Defendants, and seeks entry of an order granting the following relief:

(a)     a permanent injunction requiring and compelling Defendants to comply in all pertinent particulars with the FMIA and PPIA, as well as the regulations promulgated thereunder;

(b)     a permanent injunction enjoining and restraining Defendants and their employees, agents, representatives, successors, and assigns, from directly or indirectly selling, transporting, offering for sale or transportation, or receiving for transportation, in commerce, or within the designated State of New York, any poultry or poultry products, or meat or meat food products, that are misbranded under the FMIA or PPIA;

(c)     a permanent injunction enjoining and restraining Defendants and their employees, agents, representatives, successors, and assigns, from doing any act, with respect to any poultry or

poultry products, or meat or meat food products, while they are being transported in commerce, or within the designated State New York, or held for sale after such transportation, which is intended to cause or has the effect of causing such products to become misbranded under the FMIA or PPIA;

(d)     a permanent injunction enjoining and restraining Defendants and their employees, agents, representatives, successors, and assigns, from directly or indirectly selling, transporting, offering for sale or transportation, or receiving for transportation, in commerce, or within the designated State of New York, any poultry or poultry products, or meat or meat food products, required to be inspected by the FMIA or PPIA, unless such products are so inspected and have passed inspection; and

(e)     a permanent injunction enjoining and restraining Defendants and their employees, agents, representatives, successors, and assigns, from failing to keep such records as will fully and correctly disclose the purchase, receipt, offer for sale, sale, transportation, or any other transaction regarding any meat, meat food products, poultry, or poultry products, capable of use as human food, including the source of all products pursuant to the FMIA and PPIA; and

(f)     such other and further relief as the Court deems just and proper.

Dated: April 5, 2023
Brooklyn, New York

Respectfully submitted,

BREON PEACE
United States Attorney
*Counsel for Plaintiff United States*
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

By: _____
Kevin Yim
Assistant U.S. Attorney
(718) 254-6186
kevin.yim@usdoj.gov